Good morning, Your Honors. I'm Ellen Lake with Scott Cole on behalf of Appellant Stephen Whiteway. I'd like to reserve three minutes for rebuttal. This is an appeal from summary judgment in a wage and hour case. Under California law, where an exemption is at issue, the employer has the burden of the exemption. So in this case, the defendant had the burden of persuasion as a movement for summary judgment, and it also had the burden of proof because it was the party that will have to prove at trial that the exemption that it claims applies to its employees. Defendant has not proven that there is an absence of genuine issue of material fact as to all the elements of the exemption. Basically, the defendant presented three kinds of evidence in support of summary judgment. May I interrupt you just for a minute? Conceptually, and I know this isn't a central issue here, but when I reviewed this case, it struck me that to the extent it's properly certified as a class action, there ought to be subclasses because you've got different kinds of alleged managers or different kinds of facilities. You've got the hubs, the spokes, the stand-alones. Was that issue of subclasses presented to the district court? You mean at the point earlier when we? Yes. Did you designate subclasses or did the district court raise subclasses, or are we just here purely on the class as it exists? I think the answer is that subclasses were not extensively discussed or presented, but that that would not prevent them from being designated as the case approaches trial, and such appears to be necessary. Although it appears that there was some discussion of subclasses during the certification of the class, and it appears that you took the position that all of the managers were of a piece, and it looks like Kingo's FedEx took the position that everybody was different, and now you sort of switch sides because it seems to work well on the motion for summary judgment. I don't think that was a subclass discussion. I think that was simply the basic conceptual questions about certification. We said that certification was appropriate because it was efficient, and the main issues were were these various duties? Commonality. Well, the issue was one of the issues, commonality, obviously, numerosity and so forth, but commonality. And that's why I guess I kind of, if you don't mind, it segues into your, I think, your argument, because the challenge to the study done by Kinko's is that, you know, you can't import all these other folks. You can't use, you can't make these generic comparisons. And that can be overcome by your declaration. On the other hand, it seemed to me in your argument for certification, you were conceding basically that you can treat these people with some uniformity. So tell me how your theories square in this case. Well, the challenge to the Kinko study actually by Dr. Johanson was a different kind of challenge. That was simply that it was an invalid study. We said at certification that it would be efficient to treat this as a class action because everybody in the class does the same kind of tasks, even though we conceded that there might be variations within the amount of time that they spent on the various tasks. So we never said that everyone was exactly the same. We said that class certification was appropriate because of the uniformity or the commonality of the tasks that were handled, and that if there proved to be variation, which we said we didn't think there was but there might be, then that could be handled in various ways, including subclasses. All right. Well, then let me make my question a little more understandable. You have a post-summary judgment with declarations of individual managers and an attack on the study. Correct. Right. Conceptually, because it's a class action, why should we consider the individual declarations as trumping to the extent that any evidence weighing needed to be done, the generic class study? Well, their class – I mean, we only have to respond to their evidence. Their class – best class evidence is the bank study, but the bank study was squarely challenged by Dr. Johanson's declaration. So in a sense, that cannot produce – that cannot support summary judgment. So then defendant is left with two kinds of evidence in support of summary judgment. One is their individual deposition transcripts of their managers, and those are subject to the same challenge that you are posing to our declarations, namely that they're just the evidence of individual people. And the rest of their evidence is their employer expectation evidence, which is, you know, we expected them to do these tasks primarily because they were managers and we trained them to do that, et cetera, et cetera. But that evidence is disputed by the 22 declarations of the individual. So what I'm saying is they don't have very much class action, class evidence themselves, and we only have to respond to what they've produced in support of summary judgment. And additionally, the 22 – Excuse me, counsel. Judge Bonita says a question. Excuse me. Let me ask a question, though. With regards to the study, even if you take into account Dr. Johanson's criticisms of the study, doesn't it still show that well over 50 percent of the work was exempt? Not at all. Even if you take into account Dr. Johanson's criticisms? No. Dr. Johanson said the study was invalid and not reliable and that the whole thing had to be essentially ignored. I mean, he said that this was a non-reliable, non-valid study. And additionally, he said that if some of the criticism he had had been corrected, that in fact he thought the study would have come out the other way. And that's in paragraphs 13 and I think 26 at pages ER 31 and 36. So Dr. Johanson's declaration completely disputed and negated the bank study, but it also provided affirmative evidence in support of the notion that more than half – that more than half of center managers' times were spent on non-exempt duties. All right. Thank you. Additionally, the class member declarations were broadly representative of the class. They covered over 50 – of the 200 stores for which there are center managers in the class, these declarations were by people who had been center managers at 50 of those stores. Additionally, they had been – held the position of center manager for an average of over five years. So they were not simply narrow bits of view of what the center manager job was. These are people who had held the job for an extensive period of time at numerous different stores and could present a class-wide view of the duties of a center manager at these stores. I think we have your argument at hand. Why don't you save the rest of your time for about – we've got a little over six minutes, and we'll hear from the other side. Please, the court. Keith Jacobi and Theodore Lee from FedEx Kinkel. All right. Well, you're going to both argue? Who's going to argue first? I'm going to argue first, and I'm going to address the issues of the company policies and the declarations. Ms. Lee, why don't you have a seat and let him finish, and then how many minutes are you going to – Can I discuss the bank survey? Yes. How many minutes do you want to take? About half the time will be fine. All right. Very good. And I'll remind you, and then, Ms. Lee, you can set up that. There were only two issues before this court on appeal. Whether FedEx Kinkel's managers perform duties that meet the managerial exemption, whether they exercise sufficient discretion and judgment in the duties they perform, and whether they are performing those discretionary duties more than 50 percent of the time. That's it. All of the other elements of the exemption, which FedEx Kinkel has the burden to prove, have been conceded below, and that is reflected in Judge Armstrong's order. Mr. Jacobi, if you wouldn't mind moving over just a little bit so we pick it up the mic. Not only does it help us hear, but there is an audio recording we make of this, so I'd assist in that. So thank you. The fundamental and dispositive distinction between the evidence that FedEx Kinkel's presented and the evidence that Appellant presented is this. The FedEx Kinkel's, through the presentation of policies, the testimony of executives, and through the bank study, presented class-wide common proof that applies, that can apply to all of the nearly 500 people who belong in this class. What the plaintiffs were relying on was footnote 38 in their summary judgment motion, these 22 declarations, and basically the plaintiffs broke the covenant that they made with the court when they moved to certify the class. When the class was certified, they agreed that they would use common proof, proof that if taken in by the court could apply to the entirety of the state.  And you know that it's true because of what Ms. Lake just said. She said, well, they're representative of the whole class, but where is the evidence of that in the record? In one sense, counsel, they didn't really break that covenant of common proof because the declarations are largely identical. It might have just been one declaration signed by 22 people. In fact, you can see there are some blanks in the declarations. As Judge Bivey pointed out earlier, both sides have sort of shifted positions. You said, for heaven's sakes, there's no commonality. Don't certify this class. And now you're saying, well, you know, you can't raise a genuine issue of material fact by using individual declarations. I know you deal with the cards you're dealt, but, I mean, if we were to decertify the class, I think there would be unquestionably at least a genuine issue of material fact, wouldn't you agree? No, I don't, because, well, I agree that there could be a trial of 500 people to determine one by one whether they meet the exemption or not. But once we were dealt the cards of class certification, then we made the commitment to go forward with common proof. Now, with respect to the policies, there's no question that's common proof. And there's no question that the plaintiff's appellants have not pointed to a single policy of FedEx Kinko's that, if it was followed the way FedEx Kinko's directed, would defeat the exemption. There's no evidence of that. And Judge Armstrong knew that was true because she commented that the reviews of the FedEx Kinko managers all dealt with reviewing duties that were managerial in nature. And she said that that was powerful evidence that not only did they have an expectation that this work would be formed in a managerial way by the only exempt person in the store, but that's actually how they reviewed and gave out raises. Now, with respect to the 22 declarations, I would suggest this to the court. If we were to take a poll this afternoon of everybody who walks in and out of this court of who is going to be the next governor of this state, we'd get an answer. We'd probably get a lot more than 22 people. We might get over 1,000 people. But that wouldn't be representative of how the state is going to vote for the next governor because, to get representative evidence, you have to put forth something affirmative and say that these people who we polled actually stand for the state. That's how you can talk to 1,400 Americans and find out who's going to be the next governor.  Well, that's part of the class action you deal through the representatives. I'm not sure I take your point. Well, my point is that your point may be that it's not statistically accurate. I grant you that. But the question is, does it raise a genuine issue of material fact? Well, I would suggest that unless they did the homework of tying these depositions, these declarations together and showing that, yes, this is representative of the entire state, that only then would a triable issue of fact exist as to whether statewide this exemption was viable. Remember, what was certified was not whether individual one, two, three, or four had a claim. It is very possible in a class action that there will be individuals within the class who could win if they tried their case individually. That's precisely why there's a notice period. And that's precisely why they have the opportunity to opt out. And in that notice, putative class members are told, you may have an individual claim and you will be bound by the judgment of the class. And so for the appellants to say, well, here are 22 people that their claim looks pretty good, that's meaningless at this stage. That's 100% of the people you have in the case and 5% of the class probably, right? Twenty-two people would be less than 5% of the class. A little less, yeah. But the question here is, I mean, normally I would look at this. Let's say my reaction would be, well, you've got an expert study and you have a tax on the methodology of declarations. We're not going to resolve that on appeal. Let the district court or jury sort it out. They're genuine issues of fact. Class certification changes that a bit, but how much does it change it? Well, I think it changes it completely because it changes the call of the question to whether there are people in this state who don't meet the exemption. That is a possibility. To whether statewide the exemption is not viable. And I think at this point I'm going to turn my argument over to Ms. Lee, who's going to talk about the bank study. Very good. Your Honor. Wait a minute, Ms. Lee. Wait until he sits down. I know you're eager. Okay. May it please the Court. The Court correctly pointed out that at the certification stage, the appellate took the position that there remains no evidence that despite variances in time spent on particular tasks, the job duties and responsibilities of any center manager are any different than the other. The appellate went on to state that the task list shared by all center managers is the same, and that the individual variations are not really significant. The plaintiff has in fact asserted that what one center manager does, they all do. We submitted uncontroverted evidence in this case by our expert demonstrating that a majority of the center managers perform exempt duties more than 50 percent of the time. And that study is uncontroverted. There has been no affirmative evidence put forth by appellate whatsoever to demonstrate anything other than the fact that the majority of the center managers who perform the same task as they conceded at the certification stage perform the exempt duties more than 50 percent of the time. Your claim, then, is that unless they come back with a competing study, they haven't controverted the conclusions, even though they've controverted the assumptions that were made during the study, the validity of the surveys that were issued, the way in which it was done, and so forth. That is correct, Your Honor. They have ---- That's a little bit contrary to the theory of Rule 56, because it's a genuine issue of fact, not a genuine issue of opinion. So to say that they're required to counter with an expert opinion is somewhat contradictory to what we think about in genuine issues of material law. Well, Your Honor, they have to put forth evidence to contradict, to create a tribal issue of fact. Counsel, they ---- the defense that you've raised here is your burden. You have to come forward with the evidence to show that your ---- that these employees are managerial. Now, if they've provided Mr. Johanson, who's provided his declaration, says, you know something, they haven't satisfied the burden of proof because the bank study is not valid. Your Honor, but ---- That seems to put it into controversy. I may agree with one side more than the other, but that's not my job here today. Well, Your Honor, let me point out that Johan ---- Dr. ---- George Johanson's criticisms of the bank study goes to the weight of the study. It does not create a tribal issue of fact. There was no weighing that the ---- But the weight given the study is not an issue of fact? That's something that's an issue of law?  Right. But what weight do we give it seems to me to be absolutely critical to your case. Was the district court entitled to judge the weight to be given the study? The district court, as the gatekeeper, has the determination under the Daubert decision to look at the study to determine whether it has generally accepted survey principles and results and that the statistically correct manner in which it was presented. That goes to admissibility under Daubert. It doesn't go to whether or not it demonstrates the absence of a genuine issue of material fact for summary judgment purposes. But, Your Honor, in order for there to be a ---- to create a tribal issue of fact, Mr. Johanson would have had to come forth with an affirmative evidence that what he did in the study was not just that it was not accurate, but that the results were something other than the results that were set forth. He did not do that. The only thing that he did is talk about flaws. He talked about she should have used the test-retest method. We demonstrated through the evidence that's uncontroverted, that the Cromback Alpha is the appropriate manner in which you do the validity. It sounds like a cross-examination to me. As far as a cross-examination, what the appellates are trying to say is that Johanson declaration somehow created a tribal issue of fact. Our point ---- Our point ---- Our point ---- So let me see if I can put it in a slightly different context. Okay. What you're saying is that the Banks study meets the Dawbert requirements, therefore it's admissible, and therefore it would carry the date, the day on the issue, if there were no controverting evidence, right? Correct. Okay. And then what you're saying is that Dr. Johanson's opposition to the study would itself not meet the Dawbert definition, and therefore it could not be weighed and could not be used as evidence to controvert the Banks study. Is that what I'm understanding? That is correct because the Johanson declaration did not present any substantive facts or evidence for the district court to even weigh. No, but that's what the declarations came in on that. I mean, that's why it makes it an interesting case because of the certification. But the question is, what weight do we give the declaration, say, look, you have the study, and we can challenge the study methodology, but our affirmative proof is the fact that these representative plaintiffs say that their allocation of time is different. But the issue here is there has to be representative evidence. Once the class was certified, appellants bore a burden to present class-wide evidence. Counsel, since you bear the burden of proof on this defense, why couldn't Johanson come in and say, look, they've misadded all the numbers, and here it is. They've added all the numbers. Whatever else they did that was right, they've added all the numbers wrong, and, therefore, you don't carry your burden of proof. But Johanson didn't say that. No, no. He's asking hypothetical questions. He said basically ---- Counsel, counsel, Judge White is asking hypothetical questions, so could you address that burden of proof? Okay. If he had come in and presented evidence that our numbers were wrong, we would have a triable issue of fact. Okay. Thank you. What's the difference logically between that and saying the methodology yielded wrong numbers? Because it goes to the weight of the study. It doesn't go to create a triable issue of fact. In order to create a triable issue of fact, you must put forth, as Judge Beebe said, you have to put forth some analogy that these facts are not correct, and here are the right facts, and, therefore, you have a triable issue of fact. Simply attacking a study with no affirmative evidence on your own does not create a triable issue of fact. Indeed, if you look at the case cited by the plaintiffs, the Shropp case, that case is very instrumental here. In that case, the expert submitted affirmative evidence, and the court was charged with having to weigh the two experts' opinions, and, therefore, they could determine whether or not there was a triable issue of fact. In this case, there is no disputed factual issues to resolve because there is no affirmative substantive facts or evidence. Indeed, one of the things that you can do is look at the Rebell case, which was decided by this Court, where it specifically says assertions similar to the assertions set forth in this declaration do not automatically create a genuine issue of fact. Because the appellate's declaration did not offer any affirmative evidence to refute Dr. Banks' declaration, that's what the issue is. If he had submitted some type of representation, or if he had said this survey is not representative of the class to create a triable issue of fact, then we would have something to talk about. But his declaration simply went through and criticized the type of test that was utilized, saying it was the test-retest method was not used. It is clear from the uncontroverted evidence that the Crombeck alpha was supposed to be used. He also goes on and says that, you know, you use out-of-state folks. They've said center managers do the same thing all over. Those are not attacks on the actual substance. I think we take your point on that, and your time has expired. Thank you, Your Honor. Are there any further questions? If not, we'll hear rebuttal. I think we just have a fundamentally different view about what it means to dispute for purposes of summary judgment, and I don't think there is any support for the notion that proving that or if defendant comes in with a study and plaintiff shows that that is invalid in eight different ways, that is precisely the type of issue that would go to a jury to decide do you believe this expert or don't you believe the expert. It's not like the expert was disputed by a layperson. We had two experts presenting declarations in the summary judgment motion, and our expert simply said that the bank study was invalid and unreliable for these eight or ten different reasons. That is certainly enough to establish a genuine issue of material fact as to the validity of the study and the validity of the opinion, and in effect takes that bit of evidence by the defendants out of the picture in terms of what is the undisputed evidence that's left in support of their position. Additionally, it's not even true to say that Dr. Johanson did not present any evidence of his own. As I said when I told you several paragraph numbers earlier, he said if the survey were balanced with respect to exempt and non-exempt tasks, would the results possibly be different? And then he went on to explain how if the criticisms he had of the bank study had been corrected, we would get a different result in terms of the outcome of the balance of exempt and non-exempt tasks. And in particular, at paragraph 26ER36, the data would indicate that a more balanced presentation of tasks would likely have resulted in a different finding. So if it is required for him to present affirmative data of his own, he did so in the context of criticizing the bank. Can you answer me a question that I should know but don't as I sit here? At what stage did the district court grant summary judgment? Are you finished with discovery yet? You've concluded discovery? Yes. Go ahead. So once that piece of evidence is sort of off the table in terms of being undisputed, what we have left is the employer expectation evidence, which only says what we expect people in this classification to do. And in response to that or in disputing of that, we have all this evidence. The plaintiff himself, his evaluations were presented in evidence, and he was fully satisfactory as an employee during his five years as a CM. And then we have the 21 other declarations, which are undisputed in terms of whether FedEx Kinko's felt that these people were doing the job. In fact, there is no evidence in the record to suggest that they were not also doing fully satisfactory jobs as center managers, and, therefore, their declarations constitute disputing evidence against the defense evidence that these were our expectations of what a center manager would do. And then that leaves only, in support of their motion, the depositions of a handful of center managers who said, we do the job this way. And so you have maybe eight or ten depositions to that effect, and you have 22 depositions and 22 declarations by the plaintiffs, plaintiff and class members. And that is the type of dispute that should preclude summary judgment. Okay. I think we understand the argument. It's pretty discreet. And we thank you both for your presentations, and we will be in recess for the morning.
judges: Thomas, Bybee, Benitez